48 CCPA

**Application of Alfred C. HAVEN, Jr.**

**Patent Appeal No. 6584.**

United States Court of Customs and Patent Appeals.

Feb. 21, 1961.

Rehearing Denied June 2, 1961.

Worley, C. J., and Kirkpatrick, J., dissented.

Edwin C. Woodhouse, Wilmington, Del., for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the rejection of the only claim of appellant's application Serial No. 365,556, filed July 1, 1953.

The appealed claim recites a single organic compound:

"1. Aminocyclopentadienyl (cyclopentadienyl) iron."

The novelty, unobviousness, and utility of the claimed compound are not in dispute. The solicitor in his brief stated the issue to be as follows:

" * * * the primary question at issue is whether the original specifi-

cation presented to the Patent Office met the requirements of 35 U.S.C. 112 of a written description of the *'manner of using'* the invention, in full, clear, concise, and exact terms [Emphasis ours.]"

We adopt this statement as properly descriptive of the main issue before us. Subsequently we shall discuss a secondary issue.

The specification recites methods for the preparation of the claimed compound in detail sufficient to satisfy the examiner. Some physical and chemical properties of the compound are also recited. The last paragraph of the description is as follows [emphasis ours]:

"*Aminocyclopentadienyl (cyclopentadienyl) iron is a useful intermediate in the preparation of dyestuffs* and also has anti-oxidant properties. The presence of the amino group attached to the dicyclopentadienyliron structure permits conversion into other useful compounds, since a large number of other materials can react with the amino group."

We find it necessary in deciding the main issue to consider only the emphasized portion of this paragraph.

It is clear from the appealed claim that appellant considers that what he invented is a new organic compound. It also appears undisputed that dyestuffs as a group are inherently useful and that one skilled in the art need not be told how to use dyestuffs. Our task here is to decide whether one with ordinary skill in the art would know, without more, how to prepare dyestuffs from the claimed compound. We think he would. We reach this conclusion by the following steps:

1. It is clear from the specification that the claimed compound is an amine

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of*

*Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

and that it contains an amino group, $-NH_2$.[1].

2. The claimed compound is an aromatic compound and hence is an aromatic amine with an amino group.

3. Those skilled in the art know how to transform an aromatic amine with an amino group to dyestuffs and particularly to azo-dyestuffs.

We now consider steps 2 and 3 in more detail.

With regard to step 2, we refer to the first letter of the examiner to appellant wherein it is stated:[2]

"The following reference is cited to show the state of the art:

"Woodward—J. Am Chem. Sal. Vol. 75, p. 3458–3559, July 1950 * * *".

Since the examiner considers Woodward et al. to be part of the prior art, we are entitled to presume that one skilled in the art would be familiar with it. This reference is entitled "A New Aromatic System" and discusses "iron biscyclopentadienyl." Appellant states in his specification that the claimed compound is an amino derivative of dicyclopentadienyliron, and that dicyclopentadienyliron is also known as "bis-cyclopentadienyl iron." We consider "iron biscyclopentadienyl" and "bis-cyclopentadienyl iron" to be synonymous. Woodward et al. discuss the structure, reactions, and properties of iron biscyclopentadienyl and certain of its derivatives. In discussing a particular structural formulation or expression of one of the carbocyclic rings of iron biscyclopentadienyl, Woodward et al. state:

"* * * This expression calls to mind the very similar circumstances obtaining in the case of benzene * * *."

The following additional excerpts from Woodward et al. are also pertinent:

1. Hackh's Chemical Dictionary, 3rd Ed., defines "amino" as "The monovalent basic $-NH_2$ group."

2. Apparently this reference contains certain typographical errors. It appears

"We were led by these considerations to the view that iron biscyclopentadienyl might behave as an aromatic substance. We now wish to record experiments which demonstrate typically aromatic properties of this unique iron compound, for which we propose the name *ferrocene.*

"In spite of its high degree of formal unsaturation, ferrocene does not possess properties typical of polyolefinic substances. It does not react with maleic anhydride in boiling benzene, and is not hydrogenated under normal conditions over reduced platinum oxide. Its resistance to the action of acidic reagents, and its great thermal stability have been mentioned previously. * * *

* * * * * *

"Many of the typical substitution reactions of classical aromatic systems are brought about by strongly oxidizing species, such as $NO_2^+$ and $Br^+$. The ready conversion of ferrocene to the ferricinium cation supervenes when attempts are made to carry out substitution reactions on ferrocene with such agents.

"A comparison of relevant physical characteristics of ferrocene and its derivatives with the corresponding properties of analogous benzenoid compounds reveals certain similarities. * * *"

We think Woodward et al. teach that dicyclopentadienyliron and certain of its derivatives have typical aromatic properties which are analogous to the properties of benzene and its corresponding derivatives. Although Woodward et al. do not specifically discuss aminocyclopentadienyl (cyclopentadienyl) iron and the corresponding benzene derivative, aniline or aminobenzene, we agree with

from the record that the correct reference is: Woodward et al., in J.Am.Chem. Soc., Vol. 74, July 5, 1952, pages 3458–3459.

appellant that one skilled in the art would reasonably expect, in view of Woodward et al., that appellant's amino compound would have many properties analogous to those of the aromatic amine, aniline. In other words, we think that one skilled in the art would assume that appellant's amine is a typical aromatic amine.

■ We turn now to step 3, supra, in our reasoning. At oral argument, the solicitor invited us to take judicial notice of the book, "Organic Chemistry" by Paul Karrer, as an indication of the prior art relating to dyestuff manufacture. We accept this invitation.[3]

At page 443 of Karrer, we read:

"Aniline. * * * the simplest and most important amine of the aromatic amines, * * *".

At page 444, it is stated:

"Aniline is a most important starting material for the preparation of dyes and intermediates (azo-dyes, aniline black, aniline blue, fuchsine, etc.)."

In discussing certain homologues of aniline, Karrer states at page 446:

"The toluidines are extensively used in industry for the synthesis of dyes (azo-dyes, primuline-, and fuchsine colours etc.).

* * * * * *

"They [m- and p-xylidine] are used for the manufacture of dyes (especially azo-dyes)."

At page 461, Karrer discusses a reaction of aromatic amines [second emphasis ours]:

"The products of the action of nitrous acid on acid solutions of primary aromatic amines, the *diazonium salts*, discovered by P. Griess, are the most important derivatives of aromatic bases. *Their importance cannot be easily over-estimated, as they are indispensable starting materials for the preparation of various other derivatives, as well as the parent substances of the large and important class of azo-dyes.*

"The preparation of diazonium salts from primary aromatic amines is called 'diazotization'. It is carried out by acting upon a solution of an amine in a mineral acid with sodium nitrate, * * *."

With regard to this last quotation, it is pointed out appellant's specification discloses that the claimed compound is soluble as the amine salt in aqueous acids such as hydrochloric acid. Karrer also recites, pages 461–462, extensive directions for the preparation of diazonium salts from various aromatic amines.

Chapter 33 of Karrer relates to azo-dyes and similar azo compounds. *It appears that azo-dyes are prepared largely from diazonium salts.* No need is seen to cite specific sections from this 18-page chapter.

By our consideration of Karrer, we are persuaded that one skilled in the dyestuff art need not be told how to transform an aromatic amine into dyestuffs and particularly into azo-dyestuffs.

We think that appellant's application meets the requirements of 35 U.S.C. § 112 for a written description of the manner of using the invention. As we stated in In re Nelson et al., 280 F.2d 172, 184, 47 CCPA 1033:

"* * * where those of ordinary skill in the art will know *how* to use, the applicant has a right to rely on such knowledge."

We think that one with ordinary skill in the art knows how to transform appellant's amine into a dyestuff. Appellant has in effect said to those skilled in the art: My invention is a new amine; use my amine to make dyestuffs; you know how to do this because you have already made a multitude of dyestuffs from aromatic amines and you should know from Woodward et al. that my amine is an aromatic amine.

■ We come now to a secondary issue. During the prosecution, appellant proposed to add an amendment intended to include "a description of inherent

3. The third English Edition, 1947, Elsevier Publishing Company, was consulted.

properties and utilities of the amino compound of this invention" in an attempt to overcome the previous rejection of the examiner on the grounds of an "insufficient and fatally defective" specification. The examiner refused entry of this amendment on the ground that it contains new matter. Appellant continues to urge before us that this amendment or "supplementary disclosure" does not constitute new matter.

We think that the proposed amendment would be an improper addition to the disclosure especially because it asserts that the claimed compound:

"* * * may be reacted with fatty acids to form soaps, may be used to remove $CO_2$ from inert gases and as an acid gas absorbent, * *."

We think this is new matter within the meaning of 35 U.S.C. § 132. Accordingly, the refusal to admit the amendment will be affirmed.

For the reasons stated, the decision of the board is reversed as to the rejection of the claim and affirmed as to the amendment objected to as new matter.

Modified.

WORLEY, Chief Judge, with whom WILLIAM H. KIRKPATRICK, Judge, joins (dissenting).

In my opinion the disclosure of the method of using the compound claimed in the instant application is insufficient to comply with the requirements of 35 U.S.C. § 112.

The statement relied on by the majority that the compound "is a useful intermediate in the preparation of dyestuffs" is not sufficient unless a person of ordinary skill in the art would understand without further explanation how to use the compound successfully for that purpose.

No doubt it is true, as stated by the majority, that it is generally understood in the art how certain aromatic amines with amino groups may be used in dye making, but there is nothing of record to show that all of them are used in the same manner. Accordingly, the statement that a compound is an aromatic amine with an amino group would not necessarily indicate any particular process by which it could be used in dye making.

Moreover, appellant's application does not identify the claimed compound as an aromatic amine with an amino group. The majority notes that the Woodward article states that iron biscyclopentadienyl demonstrates typically aromatic properties, and concludes that this teaching would lead one skilled in the art to suppose that appellant's compound, which is similar in some respects to that discussed by Woodward would have similar properties, and that one such similar property would be suitability for use in making dyes by the method previously employed in connection with aromatic amines.

While it is conceivable that one skilled in the art might make the suggested inference and might then be able to adapt some known process to use with the claimed compound, the matter is, at best, highly speculative. Moreover, I question whether it can properly be assumed that all skilled persons were or are familiar with the contents of the Woodward article, which is not mentioned in appellant's application, and I have grave doubts whether an application disclosure which is dependent upon knowledge of some particular publication which is not a standard reference text and is not identified in the application constitutes a compliance with 35 U.S.C. § 112.

It is significant that appellant has not, even now, undertaken to point out any specific process by which the claimed compound can be used in dye making. Even assuming the general procedure to be suggested by analogy to prior processes using amino compounds, the particular process, materials, and proportions to be used are left to speculation and experiment. Such a disclosure does not, in my opinion, satisfy the statutory requirement. I would affirm.